IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
JACQUELINE FOLGER,              )
On Behalf of Herself and        )
All Others Similarly Situated   )
                 Plaintiffs,    )    CIVIL ACTION
                                )
v.                              )    No.  13-1203-MLB
                                )
MEDICALODGES, INC., and GAREN FOX, )
                                )
                 Defendants.    )
                                )
```

**MEMORANDUM AND ORDER**

This case comes before the court on plaintiffs' motion to conditionally certify this case as a collective action under section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to recover unpaid overtime compensation. (Doc. 76). The motion has been fully briefed and is ripe for decision. (Docs. 77, 87, 92). Plaintiffs' motion is denied for the reasons herein.

**I.     Facts and Procedural History**

Plaintiff Jacqueline Folger was employed by Medicalodges at its Goddard nursing facility as a MDS Coordinator. Since the filing of the amended complaint, twelve current and former employees have opted in as plaintiffs.[1] The opt-in plaintiffs held various positions at eleven different Medicalodges' facilities. Defendant Garen Fox is CEO and General Counsel for Medicalodges, which operates twenty-three skilled nursing facilities throughout Kansas, Missouri and Oklahoma.

The amended complaint alleges that Medicalodges violated the

---

[1] Fourteen plaintiffs filed a consent to join and subsequently, two of those plaintiffs withdrew their consent.

FLSA by misclassifying MDS Coordinators as salaried employees (Count 1) and failing to accurately record work time and properly pay hourly employees for the hours worked (count 2).[2]

Medicalodges has several policies concerning its employees. (Doc. 77, exh. 2). Medicalodges requires hourly employees to take a thirty minute break during an eight hour shift. The hourly employees are not paid for the break and the thirty minutes is automatically deducted from their paychecks. In the event an hourly employee works during a lunch break, the employee is to complete a time clock adjustment form in order to receive compensation. Medicalodges also has a policy requiring employees to get approval prior to working overtime. Plaintiffs admit that these policies comply with applicable law.

Initially, Folger was an hourly employee. Folger testified that she was unable to complete her job duties in a 40 hour work week and was allegedly reprimanded for working overtime. Folger began working off the clock in order to complete her job duties and not incur overtime pay. Ultimately, Medicalodges converted Folger's position from hourly to salaried and Folger performed the same job duties.[3]

Folger alleges that she and other similarly situated hourly

---

[2] The amended complaint also sets forth state claims which presumably may be the subject of a Rule 23 class certification motion after discovery has been completed.

[3] There could be an inference that Folger may have been made a salaried employee in order to avoid paying her overtime as an hourly employee. Whether this was, or was not, Medicalodges' motivation is immaterial at this juncture. What is important is that the amended complaint does not allege that such a change of status violates the FLSA. The amended complaint also alleges that "similarly situated" hourly personal were converted to "salaried employees" but if that occurred, the employees are not identified, either by name or number.

employees were not properly compensated by Medicalodges for working overtime. Folger and other employees allegedly worked during their lunch break with Medicalodges' knowledge and without payment and that Medicalodges required the employees to work during their lunch break.

The magistrate judge issued a scheduling order in which discovery was separated into phases. The first phase (phase I) focused on issues related to collective action certification. (Doc. 22). During phase I, the parties served Rule 26(a)(1) disclosures, interrogatories and took depositions. At the conclusion of the phase I discovery, Folger moved for conditional collective action certification. (Doc. 76). Defendants oppose the certification.

**II.   Analysis**

An action under the FLSA may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To participate in an FLSA collective action, all plaintiffs must give consent in writing and it must be "filed in the court in which such action is brought." Id. Before notice of the pending action is sent to putative plaintiffs, it must be conditionally certified as a collective action. The court may certify an opt-in collective action so long as the aggrieved employees are similarly situated. Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102, 1105 (10th Cir. 2001). Section 216(b) does not define "similarly situated." The Tenth Circuit has approved an ad hoc case-by-case basis for determining whether employees are "similarly situated" for purposes of § 216(b). Id.

This process involves a two-step inquiry. The first step occurs

-3-

at the "notice stage" of the proceedings. Here, the court determines if certification is proper for purposes of sending notice of the action to potential collective action members. The notice stage "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Id. The requirement for "conditional certification" at the notice stage is a "lenient one." Thiessen, 267 F.3d at 1103. It does not appear that discovery at the notice stage is required. Nonetheless, discovery was ordered by the magistrate judge and there is nothing in the record to show that any of the parties opposed it.

The second step occurs after discovery is complete. At that stage, defendants may file a motion to decertify and the court then applies a stricter standard to assure that plaintiffs are actually similarly situated. During the second stage, the court reviews a number of factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required . . . before instituting suit." Thiessen, 267 F.3d at 1102-03.

Defendants urge the court to apply an intermediate standard and cite to Thiessen v. General Elec. Capital Corp., 996 F. Supp. 1071 (D. Kan. 1998) in support of their position. In his decision, Judge John Lungstrum utilized an intermediate standard in which the limited evidence was applied to the second stage factors. Judge Lungstrum noted that he made his "determination to provisionally certify, however, under a more lenient standard in light of deficiencies in the

record." Id. at 1081. Judge Lungstrum's decision to conditionally certify the class using the intermediate standard was not reviewed on appeal. The Tenth Circuit's decision, issued three years later, reviewed his decision to decertify the class. Thiessen, 267 F.3d at 1102-03.

The intermediate standard has not been applied in any recent District of Kansas or Tenth Circuit decisions.[4] In a more recent case, Judge Lungstrum declined to "apply an intermediate level of scrutiny in the absence of any suggestion from the Tenth Circuit that an examination of the specific issues in this case that might weigh against certification can occur at any stage short of summary judgment proceedings or final certification." In re Bank of Am. Wage and Hour Emp't Litig., 286 F.R.D. 572, 577 (D. Kan. 2012). But Bank of America is a multi-district case with issues far more complex than those present here. For example, on the crucial issue of the existence of a plan or policy, plaintiffs presented expert evidence of a "pervasive pattern" of unpaid overtime, which would violate the FLSA. No such evidence has been presented in this case.

In this case, the magistrate judge's decision to allow discovery, while undoubtedly appropriate, presents this court with an interesting dilemma. Plaintiffs could have opposed discovery on the basis that the allegations in the amended complaint satisfied the requirements for phase I collective action certification. Apparently that did not happen or, if it did, the magistrate judge was not persuaded. Or, the parties may have agreed to discovery. The record

---

[4] But the standard has never been rejected by the Circuit, either.

is silent. But regardless why it was authorized, substantial formal discovery has taken place. (In addition, plaintiffs' counsel allegedly engaged in some "self-help" activities such as placing ads about the case in newspapers in communities where Medicalodges' facilities are located). Finally, Medicalodges has submitted almost 100 "happy camper" affidavits from its employees for the ostensible purpose of refuting allegations in the amended complaint.

So the point is this: by doing all of these things, the parties have signaled their expectation that the court will consider matters beyond the allegations of the amended complaint in determining whether to allow conditional certification, even though all merits discovery has not been completed. Were this not the case, substantial amounts of time and money would have been expended for naught, clearly contrary to Fed. R. Civ. P. 1. Indeed, although plaintiffs argue that the court should not review the evidence produced during discovery at this stage of the proceedings, plaintiffs cited to deposition testimony to support their motion. Therefore, reviewing the deposition testimony to determine whether there is factual support for the existence of an unlawful policy is entirely proper at this stage.

To obtain authorization for certification, plaintiffs must set forth "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Thiessen, 267 F.3d at 1102. In determining whether plaintiffs are victims of a single policy, the court can consider the substantial allegations of the complaint along with any supporting affidavits or declarations. See, e.g., id.; Renfro v. Spartan Computer Servs., Inc., 243 F.R.D. 431, 434 (D. Kan. 2007); Brown v. Money Tree Mortg., Inc., 222 F.R.D.

676, 680-81 (D. Kan. 2004)(considering allegations and affidavits at notice stage); <u>Williams v. Sprint/United Mgmt. Co.</u>, 222 F.R.D. 483, 485 (D. Kan. 2004). In considering the submissions, the court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims. <u>Swartz v. D-J Engineering, Inc.</u>, No. 12-1029, 2013 WL 5348585, *5 (D. Kan. Sept. 24, 2013)(citing <u>Barnwell v. Corr. Corp. of Am.</u>, No. 08–2151, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008); <u>Gieseke v. First Horizon Home Loan Corp.</u>, 408 F. Supp.2d 1164, 1166 (D. Kan. 2006)).

### A. Hourly Employees

Plaintiffs seek to conditionally certify a class of "all hourly employees who worked for Medicalodges' care facilities during the last three years." (Doc. 76 at 1). Plaintiffs contend that the class of hourly employees has been a victim of Medicalodges' policy of failing "to compensate its employees for their off-the clock work during [] unpaid meal breaks." (Doc. 92 at 27).[5]

As pointed out, plaintiffs have acknowledged (Doc. 92 at 27) that the mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself

---

[5] In the amended complaint, Folger alleges that Medicalodges failed to pay plaintiffs for "pre- and post- shift work," "work during unpaid meal breaks," and "unlawfully round[ed] away employees' time worked to their detriment." (Doc. 30 at 5). In plaintiffs' motion, however, there is no allegation of a companywide policy to not compensate plaintiffs' pre- and post-shift work or unlawfully round employees' time worked. Plaintiffs' reply brief states that plaintiffs seek "conditional certification due to Medicalodges' systematic failure to compensate its employees for their off-the clock work during those unpaid meal breaks." (Doc. 92 at 27). Therefore, the court presumes that plaintiffs have abandoned the class-wide allegations of unlawful rounding and pre- and post-shift "off the clock" work.

-7-

does not violate the FLSA. See Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (2008). It is the failure of an employer to compensate employees who work through those unpaid meal breaks that potentially runs afoul of the Act. Id. On their face, Medicalodges' policies comply with the FLSA. Essentially, plaintiffs appear to allege that Medicalodges maintains an unwritten policy to violate the lawful policies. (Doc. 77 at 3).

While plaintiffs' burden is not heavy at this stage, plaintiffs must establish that the entire class, all hourly workers, "were together the victims of a single decision, policy or plan." Thiessen, 267 F.3d at 1102. Plaintiffs have not offered direct evidence that Medicalodges adopted an unwritten policy not to pay for worked meal breaks. Instead, plaintiffs have attached identical declarations from 11 opt-in plaintiffs.[6] The declarations state that plaintiffs were "routinely called away from [their] meal breaks to perform work." (Doc. 77, exh. 6). The declarations further state that the supervisors were aware of the situation and expected the work to be performed. While the declarations are comprised of identical allegations that defendants violated the FLSA, the opt-in plaintiffs' depositions do not support the conclusion that plaintiffs were the victims of a "single decision, policy or plan" in place at Medicalodges. The individual plaintiffs' reasons for not taking a lunch break and/or failing to submit a time clock adjustment form are

---

[6] The opt-in plaintiffs include a personnel manager, an activity director, licensed practical nurses (LPNs), housekeepers, maintenance and certified nursing assistants (CNAs).

-8-

all across the board.

Plaintiffs' motion further asserts that Folger was threatened that she would be terminated for working overtime. (Doc. 77 at 6-7). However, there is no allegation or evidence that Folger or any employee was terminated or even disciplined for working overtime. Plaintiffs' motion and declarations also contend that Medicalodges directed employees to work during their lunch. A review of the deposition testimony, however, does not support this assertion.

Plaintiff Mary Nichols testified that Medicalodges' policy is not to allow an employee to work off the clock. As the director of nursing, Nichols enforced that policy and did not allow employees to work during their lunch period. (Doc. 87, exh. E at 33). Plaintiff Cynthia Brown testified that she worked "off the clock" to finish her work because it was "unfair" to leave her work for someone else. (Doc. 87, exh. G at 44). Brown further testified that she never sought approval for overtime or reimbursement for a worked lunch. Plaintiff Dawn Hunt submitted forms to receive reimbursement for worked lunches on several occasions. (Doc. 87, exh. H at 75-77). The forms were approved at times and denied a "couple [of] times." Id. at 77. Hunt was counseled verbally by a supervisor about her time management skills due to Hunt's working during her break. Id. Plaintiff Donna Brown testified that she was interrupted during her lunch approximately six times a month. (Doc. 87, exh. I at 34). Brown did not always submit a form for reimbursement because "you didn't have time to go in there and get [one.]" Id. Brown did fill out the forms during her employment and received reimbursement on those occasions. Plaintiff Vicki Michel, an activity director,

testified that she ate lunch in her office and did not get an uninterrupted lunch breach because it was busy over the lunch hour. (Doc. 87, exh. J at 77). Michel did not inform the individuals who interrupted her lunch that she was on break because that's "not the kind of person I am." Id. at 79. Michel further testified that someone "may have known" that she was working during lunch. Id. at 90. Plaintiff Ashley Newill testified that she would get in trouble for not taking her lunch because it violated Medicalodges' policy, but that she did not take a lunch because the residents' care is more important than her lunch. (Doc. 87, exh. K at 17). Plaintiff Stacey Smiley testified that she processed time clock adjustment forms for employees when she was personnel manager. Smiley did not submit the forms for herself because she was fearful of her supervisor, Miss Brooks. (Doc. 87, exh. L at 42).

Plaintiffs seek certification of more than two thousand employees who worked for numerous managers across the Midwest at various Medicalodges facilities. Plaintiffs contend that they are similarly situated to all other employees because they all were required to work during their lunch breaks and did not get reimbursed. As shown, however, the deposition testimony does not provide evidentiary support for plaintiffs' class-wide allegations. The depositions show that "the opt-in plaintiffs were themselves paid for meal breaks on many occasions during the class period—specifically, that they filed requests to reverse the half-hour meal-break deduction, those requests were honored, and they were paid for working through lunch." Saleen v. Wast Mgm't, Inc., 649 F. Supp.2d 937, 942 (D. Minn. 2009). Although plaintiffs have a lighter burden at this stage, plaintiffs

still must show a that there were the victims of a "<u>single</u> decision, policy or plan" in place at Medicalodges. <u>Thiessen</u>, 267 F.3d at 1102. "The mere fact that a small fraction of employees allege that they did not receive the compensation to which they were entitled provides almost no evidence that the reason that these employees were underpaid was because of an unlawful companywide policy." <u>Saleen</u>, 649 F. Supp.2d at 941.

Conditionally certifying a class of two thousand employees will result in enormous expense to both plaintiffs and defendants. In light of plaintiffs' dissimilarities and failure to identify an across the board policy in place at Medicalodges, the court finds that the interests of justice require the case to move forward without certification.

Plaintiffs' motion to certify the class of hourly employees is denied, without prejudice. Plaintiffs may continue to participate in discovery and refile their motion at a later date, as may be appropriate.

**B.   Salaried MDS Coordinators**

Plaintiffs seek conditional class certification of salaried MDS Coordinators on the basis that defendants unlawfully reclassified MDS Coordinators as salaried employees. Plaintiffs do not point to any provision of the FLSA which makes it "unlawful" to convert an hourly employee to a salaried employee. Moreover, "the mere classification of a group of employees — even a large or nationwide group — as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes."

-11-

Colson v. Avnet, Inc., 687 F. Supp.2d 914, 927 (D. Ariz. 2010)); see also Guillen v. Marshalls of MA, Inc., 750 F. Supp.2d 469, 476–77 (S.D.N.Y. 2010). In a FLSA exemption case, plaintiffs must show that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme. The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" Myers v. Hertz Corp., 624 F.3d 537, 555 (2nd Cir. 2010).

Plaintiffs contend that class certification is warranted because defendants "salaried other MDS Coordinators to avoid paying overtime for work in excess of 40 hours each week." (Doc. 77 at 9). The deposition testimony cited by plaintiffs, however, does not support this assertion. Mary Nichols, the only other opt-in plaintiff who was employed as an MDS Coordinator, did not testify that her position was reclassified at some point in time. Rather, her testimony is that it was a salaried position. Therefore, plaintiffs have not met their burden to show that Medicalodges improperly reclassified all MDS Coordinators pursuant to a "single decision, policy or plan." Thiessen, 267 F.3d at 1102.

Plaintiffs' motion to certify the class of MDS Coordinators is therefore denied, without prejudice.

**III. Conclusion**

Plaintiffs' motion to conditionally certify a collective action is denied, without prejudice. (Doc. 76).

A motion for reconsideration, regardless of how it is styled,

will not be permitted. The issue of conditional certification has been thoroughly briefed. The case is returned to the magistrate judge to formulate a discovery plan which will meet the requirements of Fed. R. Civ. P. 1. The undersigned will confer with the magistrate judge regarding discovery and, if necessary, with counsel.

    IT IS SO ORDERED.

    Dated this __25th__ day of June 2014, at Wichita, Kansas.

                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE